United States District Court
Northern District of New York
LINDA L. HAWLEY,

                Plaintiff,

     -against-                5:24-cv-00248
                                 MAD/TWD

OPWDD-CENTRAL NY DDSO
ET AL.
                Defendants.

U.S. DISTRICT COURT – N.D. OF N.Y.

**FILED**

**Nov 25 - 2024**

John M. Domurad, Clerk

## DECLARATION IN OPPOSITION TO MOTION TO DISMISS

I, Linda L. Hawley, the Pro Se plaintiff, hereby submits her Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint.

AS GROUNDS THEREFORE, as set forth more fully in the accompanying Opposition, the plaintiff asserts that her complaint states legally sufficient claims upon which relief may be granted.

WHEREFORE, the plaintiff respectfully requests that this Honorable Court:

1. Deny Defendants' Motion to Dismiss;
2. Order Defendant to cease and desist from discriminating against Plaintiff;
3. Order Defendants to make Plaintiff whole for lost wages and pension benefits of employment, with interest;
4. Allow the plaintiff an opportunity to replead, should the court find her pleadings insufficient;
5. That plaintiff be awarded appropriate compensatory damages;
6. That the Court grant such other and further relief as deems just and equitable.

State of: *New York*
County of: *Madison*
Sworn and subscribed before me this
*25th* Day of *November*, *2024* by

Commission Exp.: *5/13/25*

LORI L. FROMEY
Notary Public, State of New York
No. 01FR6281196
Qualified in Madison County
Commission Expires May 13th, 20*25*.

RESPECTFULLY SUBMITTED,
THE PLAINTIFF,

Linda L. Hawley, Pro Se
228 Maple Drive
Oneida, NY 13421
(315) 360-6558

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

### INTRODUCTION

Plaintiff, Linda L. Hawley, respectfully submits this Opposition to Defendant's Motion to Dismiss which seeks to evade accountability for clear violations of Title VII of the Civil Rights Act of 1964. Plaintiff has alleged actionable claims for sexual orientation discrimination, hostile work environment, and retaliation as interpreted by the Supreme Court in *Bostock v. Clayton County*. Plaintiff has sufficiently alleged claims of retaliation under the New York State Human Rights Law ("NYSHRL") which is akin to the New York City Human Rights Law ("NYCHRL"). Defendant's reliance on outdated and inapplicable precedent, including *Alvarado v. Nordstrom, Inc.*, is erroneous. Recent developments in law, notably *Muldrow v. Saint Louis*, further strengthen Plaintiff's claims. Further, Plaintiff's Complaint contains well-pleaded allegations that, if proven, entitle her to relief.

### FACTUAL BACKGROUND

Plaintiff has been a dedicated employee of OPWDD – Central New York DDSO since 1996. Plaintiff, a lesbian employee of Defendant, was subjected to adverse treatment due to her sexual orientation. Specifically, Defendant denied Plaintiff numerous promotions despite her qualifications surpassing those of the individuals promoted, who were heterosexual. Following complaints regarding discriminatory practices and filing charges through her union, PEF, to the Government's Office of Employee Relation (GOER) and, subsequently the EEOC, Plaintiff experienced adverse actions, including but not limited to denial of promotions, calling the Justice Center to report her adoptive parent's Family Care Home mistake of giving an individual McDonald's pancakes following their fasting bloodwork (this should have been a retraining at

1

best, instead of moving individuals that lived with each other for over 20 years that considered each other family, and causing everyone involved emotional pain),  moving her cubicle to the worst and most infamous location in the entire building, and disobeying an Order of Protection by allowing an individual who previously tried to attack Plaintiff with a fire extinguisher to enter her place of work, orchestrated to create a retaliatory work environment. Plaintiff endured a hostile work environment, as coworkers and supervisors subjected her to increased surveillance, ostracism, and other conduct that created an intimidating and abusive atmosphere. These actions were pervasive, unwelcomed, and directly tied to Plaintiff's sexual orientation and subsequent filing with the EEOC, making it difficult for her to perform her job duties effectively.  Lastly, under the NYSHRL, as recently amended, the law now mirrors the broad protections of the NYCHRL, which historically emphasized a plaintiff-friendly framework. Defendant's actions satisfy the standard for retaliation under both statutes.

The Defendant's reaction was to not seriously consider Plaintiff's complaints, but rather to accuse of her of being a weak supervisor, which given that there is no documentation to support this claim, is pretext for discrimination.  Defendant's claim is not only false, but it is contradicted by Plaintiff's lengthy work history.  Please see Plaintiff's E-file.

Instead of giving serious consideration to Plaintiff's complaints, Defendant retaliated against her. The moving of her cubicle was not issued because she was insubordinate, discourteous, or untrustworthy and needed closer supervision but rather because she had voiced legitimate concerns via a GOER complaint and, later, an EEOC complaint. Please note that this event has shown temporal proximity to Plaintiff's first Employee Rebuttal to Defendant's first Employer Position Statement in December 2022.  This act of retaliation that was meant to stop shining light on this practice of inequality in access to promotions based on sexual orientation

2

failed. I continued to object to the discriminatory, inadequate actions of the Defendant to hire those who were less qualified than Plaintiff on numerous professional levels; and they were heterosexuals.

Plaintiff is an openly gay person, and her appearance, behavior, and mannerisms do not conform to gender stereotypes. As a result, she usually suffers various forms of discrimination because of her gender non-conformity and lesbianism at her place of employment, both overt and subtle in nature. She is female, but her appearance incorporates many masculine characteristics, which creates a conflict in the minds of some, triggering a bias based on stereotypes of gender and sexual orientation. This results in evident and subtle behavior and bias in her peers, evidenced by lack of promotions though she's higher qualified, exclusion, and a dismissive attitude toward her complaints. For example, she chooses to wear outfits that look more masculine; meaning, she wears slacks, buttoned-down shirts, and large black shoes like a male that identifies as a heterosexual might wear.

Previously mentioned acts of discrimination and retaliation for voicing Plaintiff's concerns about Defendant's unequal hiring standards based on sexual orientation discrimination (again, covered under Sex Discrimination) was an act of retaliation that occurred because of her outspoken criticisms of Defendant's inability to follow policies, discrimination against for her gender non-conformity, and lesbianism. There was no legitimate basis for these actions otherwise.

Plaintiff is not unlike the plaintiff in *Price Waterhouse* who was denied promotion because she was not feminine enough according to her employer. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 235 (1989). The employer evaluated the employee solely on stereotypical notions of gender. The court in that case held that "an employer who acts on the basis of a belief that a

3

woman cannot be aggressive, or that must not be, has acted on the basis of gender," in violation of Title VII. *Id.* at 235.

Additionally, plaintiff has alleged facts that, taken in totality, give a plausible inference that she has been subject to discrimination bias and retaliation based on her sexual orientation (which falls under Sex Discrimination according to Title VII). The previously mentioned incidents (her adoptive parent's Family Care Home being inappropriately reported to the Justice Center, moving her cubicle space to the infamous cubicle space; aggressive conduct of Mrs. Johanna Reed while she was on a Teams meeting in which she glared at the back of Plaintiff's head and, finally, the incident that involved the Defendant recklessly ignoring an Order of Protection and allowing a dangerous individual to come to her place of work) demonstrates this is so, as well as the comments that show pretext stating that Plaintiff was not a strong supervisor while there is no documentation whatsoever to support the claim; only quite the opposite as she has only good evaluations and commendations as a supervisor. These comments, and the above-mentioned incidents, and all instances of failure to promote via Prima Facie, give a glimpse into the atmosphere at her place of employment. These incidents are based solely on her sexual orientation and her decision to complain about Defendant's illegal activity. Plaintiff's masculine appearance and mannerisms offends some people at OPWDD – Central New York DDSO. As a result, her complaints about sexual orientation discrimination and her failure to promote are treated with derision and dismissiveness. Since her complaints about these practices are largely ignored or dismissed by the Defendant, she has suffered adverse employment actions against herself in that she continues to be overlooked for promotions in spite of proof based on a Prima Facie discrimination case and statistical data to align with this discrimination. Please see previous letter to Judge D'Agostino, with attachments, that speak to OPWDD – Central New

York DDSO's data collection that speaks to Sex Discrimination versus Sexual Orientation Discrimination for further details; the Defendant more than doubles instances of Sexual Orientation Discrimination. This is frightening given that this data doesn't accurately reflect all instances as the majority go unreported. When Plaintiff complained, she endured retaliation at the hands of the Defendant that are designed to intimidate her. Further, the proximity between Plaintiff's protected activity and the adverse actions establishes a plausible causal connection.

These instances of failure to promote are not just affecting Plaintiff's current pay as she will be worthy of a full pension at 55 years old, with 33 years of service. As a result of the lack of promotions, she will be required to work longer than originally planned as her current salary's percentage as a retiree will be far less than currently. As a result of these failures to promote, she will be required to work until she is at least 62 years old so she can obtain Social Security Benefits at the same time to offset the loss in pay from previous instances of failure to promote. Additionally, repeated instances of retaliation at the hands of Plaintiff's employer serve as a means of intimidation, and are being leveraged against her for her complaints could result in termination of her career. These are irrefutably adverse employment actions taken against the Plaintiff. Accordingly, the Defendant's motion to dismiss her cause of action for Sexual Orientation Discrimination under Sex Discrimination (Title VII) should be denied.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the Complaint but does not resolve factual disputes. Courts must accept all factual allegations in the Complaint as true and view them in the light most favorable to the Plaintiff. To survive a motion under Rule 12(b)(6), the complaint must contain sufficient factual matters, which must be accepted as true, to state a plausible claim for relief. See *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1939 (2009); citing

5

*Bell Atl. Corp. v. Twombly*, 550 US 544, 570 (2007). Claims are facially plausible when the plaintiff pleads facts sufficient for the court to draw reasonable inferences that the defendant is liable for the alleged misconduct. *Iqbal*, 129 S. Ct. at 1949. Further, under the NYSHRL and NYCHRL, retaliation occurs when an employer takes any action that would dissuade a reasonable person from engaging in protected activity. Courts must liberally construe the NYCHRL and, by extension, the amended NYSHRL.

Defendant mischaracterizes the factual allegations and applies an overly stringent standard inconsistent with the Federal Rules of Civil Procedure. Plaintiff's allegations, viewed in the light most favorable to her, establish plausible claims for discrimination, hostile work environment, and retaliation. Defendant's reliance on technicalities ignores Title VII's broad remedial purpose, which is to root out workplace discrimination in all its forms. Further, Defendant's reliance on Alvarado is misplaced and incorrect. Defendant erroneously cites *Alvarado v. Nordstrom, Inc.* to argue that the adverse actions alleged by Plaintiff do not rise to the level of retaliation. *Alvarado* predates critical shifts in New York law and fails to account for the broader scope of actionable retaliatory conduct under both the NYSHRL and NYCHRL. The distinction between state and city law highlighted in *Alvarado* is no longer applicable. Actions need not materially affect the terms and conditions of employment; they need only dissuade a reasonable employee from making a complaint, as articulated in *Burlington Northern & Santa Fe Ry. Co. v. White*. Defendant's failure to recognize this demonstrates either a misunderstanding or a deliberate misrepresentation of the applicable law.

Lastly, Title VII protects employees from discriminatory practices and retaliation, as well as harassment that creates a hostile work environment. Dismissing Plaintiff's claims at this stage

would undermine these protections and deny her the opportunity to seek justice for the harm she has suffered.

## ARGUMENT

### I.   HAWLEY HAS TIMELY FILED HER CASE

The Defendant adds another reason to its argument that should be dismissed, i.e., "...Plaintiff's claim of denial of a promotion on October 18, 2018, is time-barred," and that "Plaintiff alleges that she did not submit an "inquiry" to the EEOC until December 16, 2021, and did not actually file her claim of discrimination until April 26, 2022." Please see previously submitted information via EEOC complaints, of her denied promotion to a DDPSI from Human Resources Specialist, Rosemary Joseph, dated 9/23/21.

The September 23, 2021, incident falls well within the 300-day limit for Plaintiff to file her EEOC complaint on April 26, 2022. Therefore, the Defendant's argument that there was more than a 300-day gap between the time she first complained of the discrimination misrepresents the facts. Should any other promotion claims be considered time-barred at the Court's discretion, Plaintiff would respectfully ask that they be used as background evidence. Additionally, even if the evidence relates to a claim that would be time-barred, "[i]t will be for the judge, as the gatekeeper, to determine whether the evidence of the untimely claims satisfies the N.J.R.E. 404(b) standard . . . ." Roa, 200 N.J. at 576." Further, "If a continuing violation is shown, a plaintiff is entitled to have a court consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir. 1996). Plaintiffs complaints were ongoing, and she suffered retaliation for complaining.

### A.   Plaintiff's Claims under Title VII are timely.

Plaintiff's discrimination claims are timely as she experienced an adverse employment action within the 300 days of her filing a charge of discrimination with the EEOC. Under the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Lambert v. Genesee Hospital,* 10 F.3d 46, 53 (2d Cir. 1993), *cert. denied,* 511 U.S. 1052, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994). To bring a claim within the continuing violation exception, a plaintiff must at the very least allege that one act of discrimination in furtherance of the ongoing policy occurred within the limitations period. *See generally Cornwell v. Robinson,* 23 F.3d 694, 703-04 (2d Cir. 1994).

"[T]he general rule is that it is within the discretion of a court to allow evidence of prior acts relevant to show the motive, intent, or the plan of defendants in discrimination cases." *Cavuoti v. N.J. Transit Corp.,* 161 N.J. 107, 134 (1999) (citing *Hogan v. Am. Tel. &Tel. Co.,* 812 F.2d 409, 410-11 (8th Cir.1987). Courts have noted that "[t]he 300-day limitations period is not a jurisdictional prerequisite to suit in federal court; it is `a requirement that, like a statute of limitations, is subject to waiver, estoppel and equitable tolling,'" *Mauro v. Bd. of Higher Educ., 658 F. Supp. 322, 324 (S.D.N.Y. 1986)* (citing *Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982)),* as well as the continuing violation doctrine.

Lastly, Plaintiff's claims may prevail as to events that predate the statute of limitations period if the "`continuing violation' exception to the normal knew-or-should-have-known accrual date of a discrimination claim" applies. *Kelley,* 2019 WL 13300906, at *6 (quoting *Harris, 186 F.3d at 250*). Under the continuing violation doctrine, if Plaintiff has experienced a "continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period

may be delayed until the last discriminatory act in furtherance of it." *Fitzgerald v. Henderson,*
*251 F.3d 345, 359 (2d Cir. 2001).*

### B. Plaintiff's Claims under the New York State Human Rights Law are timely.

Plaintiff is stating a claim for relief in connection with her sex-based claim of employment
discrimination. Amendments to the New York State Human Rights Law (NYSHRL) have
lowered the bar for employees pursuing discrimination and harassment claims. Individuals may
now file a complaint of sexual harassment with the state division within three years instead of
one year. Again, to reiterate, the new law extends the statute of limitations to file a complaint of
sexual harassment with the state human rights law enforcement agency from one to three years;
therefore, Plaintiff's claims under the NYSHRL are timely. She was treated less well because she
complained, therefore she can choose to sue under the newest amended version of the NYSHRL.

## I.    PLAINTIFF HAS EXHAUSTED HER ADMINISTRATIVE REMEDIES.

Regarding Plaintiff's claim set forth, Defendant adds another reason to its argument that
should be dismissed, i.e., "... that Plaintiff's claim concerning October 5, 2023, failure to
promote does not appear to have been administratively exhausted." "Plaintiff alleges that the
most recent discrimination alleged in her complaint to the NYSDHR occurred on October 5,
2023. It is believed that this investigation is still pending before the NYSDHR and that the
EEOC has not yet issued its Right to Sue letter concerning this allegation."

The Defendant's statement is false. Plaintiff's most recent failure to promote date,
October 5, 2023, has been investigated by the EEOC and noted as evidence covered by her
***second*** Right to Sue letter dated 11/28/23.

## II.    PLAINTIFF HAS STATED A CAUSE OF ACTION

Sexual Orientation Discrimination is a form of Sex Discrimination and is covered under Title VII. The statutory language and the court's interpretation of the statute focus on the act, not the actor's specific mental state that drove the action. While evidence of the Defendant's negative attitude could be offered to support interconnection, **it is not necessary**, because Plaintiff only needs to show that the Defendant treated her differently based on her protected class.

### A. Plaintiff's Sex-Based Discrimination Claims Should Stand.

In discrimination cases, plaintiffs generally must allege sufficient facts to plausibly support that the plaintiff is a member of a protected class, was qualified, and suffered an adverse employment action, and that the employer had a discriminatory motivation. "See, e.g., *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)." In this case, Plaintiff is unable to access critical information regarding her claims that she may otherwise find during the Discovery process, where the Defendant is *required* to provide information. Plaintiff has successfully noted Pretext in the Defendant's reasoning behind their failure to promote as they stated she was a weak supervisor and the only documentation speaking to her supervisory skills are opposite to that claim. Further, there is the suspicious timing of Plaintiff's most recent promotion that falls on heals of her EEOC complaint. Should the court see fit to dismiss Plaintiff's complaints for a lack of sufficient factual allegations at the outset, it will prevent her from obtaining the necessary evidence in the Discovery process. "For this reason, many workers do not even file a lawsuit, because they do not have sufficient information to survive a motion to dismiss," Steven R. Semler, "Hijacking of Title VII Employment Discrimination Plaintiffs on the Way to the Jury," Hofstra Labor & Employment Law Journal 32, no. 1 (2014): 49-89."

The Supreme Court's recent landmark decision in *Bostock v. Clayton County*, holding that Title VII prohibits employment discrimination based on sexual orientation or transgender status, provides a promising opening to rethink the intent standard. "*Bostock v. Clayton Cty.*, Ga., 140 S. Ct. 1731 (2020)." In an opinion authored by Justice Gorsuch, the court methodically explained that Title VII's language "to discriminate because of" establishes a "but-for causation" standard in which liability is "established whenever a particular outcome would not have happened 'but for' the purported cause." "*Bostock v. Clayton Cty.*, Ga., 140 S. Ct. 1731, 1739 (2020)." The court described but-for causation as a "sweeping standard" that permits "multiple but-for causes." "*Bostock v. Clayton Cty.*, Ga., 140 S. Ct. 1731, 1739 (2020). The Bostock Court's explanation of but-for causation contradicts lower court decisions that have construed the "but-for causation" standard as "elevat[ing] the burden of proof." See, e.g., Arthur v. Pet Dairy, 593 Fed. Appx. 211, 219 (4th Cir. 2015)." The court held that "[i]f the employer intentionally relies in part on an individual employee's sex when deciding to discharge the employee—put differently, if changing the employee's sex would have yielded a different choice by the employer—a statutory violation has occurred."

### B. Plaintiff's Hostile Work Environment Claims Should Stand.

Plaintiff's hostile work environment claims were a natural outgrowth of the charges that were filed. There is ample precedent that if something is a natural outgrowth, in this instance a hostile work environment or ongoing antagonism, courts can consider it. A claim of hostile work environment is timely so long as one act contributing to the claim occurred within the statutory period; if it did, "the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).

11

The allegations concerning hostile work environment show a pervasive, ongoing pattern of discriminatory harassment. The allegations set forth in Plaintiff's complaint and EEOC charge describe an ongoing, pervasive pattern of conduct that created an abusive working environment. In order to establish a Prima Facie claim for hostile work environment, plaintiff must show that the discriminatory harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" and "a specific basis exists for imputing" that objectionable conduct to the employer. *Tolbert v. Smith*, 790 F.3d 427, 439 (2nd Cir. 2015), quoting Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2nd Cir. 1997). There is no set number of incidents that must occur before establishing a hostile work environment, rather, the court should consider the totality of the circumstances, considering the nature, severity, and frequency of the conduct. *Alfano v. Costello*, 294 F.3d 365, 379 (2nd Cir. 2002).

While some of the incidents complained of occurred before the 300-day period covered by the EEOC charge, the allegations nevertheless show an ongoing pattern of conduct that occurred because of Plaintiff's non-gender conformity and sexual orientation, well within the statutory period. See *Alfano v. Costello*, 294 F.3d 365, 374 (2nd Cir. 2002). Accordingly, Defendants' motion to dismiss Plaintiff's Cause of Action for hostile work environment should be denied.

### C. Plaintiff's Failure to Promote Claims Should Stand.

To properly allege a plausible failure-to-promote claim, a plaintiff must allege: (1) that they are a member of a protected class (Plaintiff is very open about her status as a lesbian, her wife, and two daughters); (2) that they applied for a promotion to a position for which they were qualified (she consistently held more years of NYS service, more years of supervisory experience, held a higher degree than what was needed to fill the position (please see Plaintiff's resume for more details as she held superior qualifications despite not receiving promotions)),

12

held more experience in the realm of Program Operations (many of the previously awarded candidates came from the Regional Office and had no prior experience whatsoever), held more experience covering for higher grades pay (such as a Treatment Team Leader, scored at the top of the 95th percentile for the DDPSI Civil Service Exam) ; (3) that they were rejected for the position (please see all the denial emails previously submitted as written proof); and (4) after this rejection, the position was filled by someone who was similarly or less well qualified than the plaintiff (please see candidate lists that the Plaintiff does not have access to unless her case makes it to Discovery, thank you).

Please see EEOC document "Via Respondent's Portal, dated 6/13/23, page 3, response by Dana K. Scalere, Senior Attorney for OPWDD":

*While there is no doubt that the Charging Party is a member of a protected class due to her gender and <u>suffered an adverse employment action when she was not selected for three promotional positions in 2019</u>, there is no evidence whatsoever that she was not selected due to her gender.*

This source is cited during the first EEOC investigation that was done based on Sex Discrimination alone and did not take into consideration Plaintiff's sexual orientation. Here, Defendant's counsel notes, in writing, state that Plaintiff suffered an adverse employment action when she was not selected for promotions.

Based on Plaintiff's research, "the prima facie case is to be determined solely on the basis of the evidence presented by the plaintiff, irrespective of [the] defendants' efforts to dispute that evidence. *Zive v. Stanley Roberts, Inc.*, 182 N.J. 436, 448 (2005)." Further, ""[B]ecause direct proof of intentional discrimination is often not available, the plaintiff is allowed to prove

discrimination by circumstantial evidence." *(Hagel v. Davenport*, No. A-3652-19, 42 (App. Div. Feb. 6, 2024))." Especially since most employees have little or no access to the information needed to identify discrimination. As a result, employers like Defendant are unlikely to be held accountable for discrimination, which further incentivizes inaction to address or prevent it.

Further, if an employer alleges a nondiscriminatory reason for its action, the plaintiff then must present enough evidence to show that the reason put forth by the employer is a "pretext" or a "coverup for ... discriminatory reason." "*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804-805 (1973)." Often, plaintiffs' claims are dismissed at this stage. In a situation such as this, a jury may "... consider whether the explanation given by the defendant for its actions was the real reason for its actions." If the jury found it was not, the jurors were to consider whether "the real reason is something other than illegal discrimination". *(Hagel v. Davenport*, No. A-3652-19, 42 (App. Div. Feb. 6, 2024)). "In certain circumstances a Title VII claim may be established through proof of a defendant's mere negligence, without a showing of discriminatory intent, see, e.g., *Richardson v. New York State Department of Correctional Service*, 180 F.3d at 441-42" Patterson v. County of Oneida, N.Y, 375 F.3d 206, 226 (2d Cir. 2004). This circumstance could suggest an implicit bias which, in and of itself is not illegal, *is considered illegal* if it produces discrimination.

Plaintiff has successfully shown pretext in Defendant's reasoning behind her failure to promote. Defendant stated that the "candidate did not display strong leadership skills" in every submitted rebuttal to date. There is simply no evidence, whatsoever, to validate these claims. As stated previously in her amended complaint, Plaintiff has many accolades and rare accomplishments within this agency that no other Program Director possesses. The only documentation that the Defendant has that speaks to her supervisory skills speak to an

14

excellence of standards not easily met by other Program Directors of Day Habilitations as she has a record of zero deficiencies in both the Eastern and Western parts of Central New York DDSO; a feat no other Program Manager has been able to achieve thus far.

Speaking to Defendant's discrediting Plaintiff's work history, based on information taken directly from "Frank Dobbin and Alexandra Kalev," "Making Discrimination and Harassment Complaint Systems Better," in What Works: Evidence-Based Ideas to Increase Diversity, Equity, and Inclusion in the Workplace, 2020, that states, "Workers who report discrimination through formal complaint mechanisms often find that their employer seeks to discredit them and fails to investigate complaints promptly and thoroughly. Rather than take meaningful steps to address and prevent discrimination, organizations frequently respond by attempting to establish that conduct did not meet legal standards for actionable harassment."

1. **All of Plaintiff's failure-to-promote claims should stand as Plaintiff has given circumstantial and statistical facts which would support a minimal plausible inference of discrimination based on her sexual orientation.**

Much of Plaintiff's evidence is circumstantial, however, per the McDonnell-Douglas framework, plaintiffs use this framework to show that a defendant treated similarly situated individuals differently because of race, color, or national origin. In this case, *all the people given promotions over the Plaintiff were not lesbians*. The framework is most applied in cases alleging discrimination in individual instances. Agencies should consider using this method for investigations involving the selection of individuals, such as for program participation, benefits, or services, particularly where the recipient provides a nondiscriminatory explanation for its decision. Thus, courts have essentially converted the statutory inquiry of disparate treatment discrimination into an inquiry on whether the plaintiff has met his or her burden to disprove a reason strategically asserted by the employer, "Steven

R. Semler, "Hijacking of Title VII Employment Discrimination Plaintiffs on the Way to the Jury," Hofstra Labor & Employment Law Journal 32, no. 1 (2014): 49-89." a standard that heavily favors employers.

Additionally, statistical evidence can be critical in a case where Sex Discrimination (Sexual Orientation Discrimination) motive is alleged. Per UCLA, School of Law Williams Institute Report, "LGBTQ People's Experiences of Workplace Discrimination and Harassment, August 2024", "One-third of LGBTQ employees (34%) reported experiencing at least one form of employment discrimination (including being fired, not hired, or not promoted), and 37% of LGBTQ employees reported experiencing at least one form of harassment at work due to their sexual orientation or gender identity at some point in their lives. Further, about one in five LGBTQ employees reported being fired (21%), not hired (23%), and/or not promoted (22%) because of their sexual orientation or gender identity at some point in their lives.

Almost three-quarters (72%) of LGBTQ employees reported that they heard negative comments, slurs, or jokes about LGBTQ people at work at some point in their lives. More than half of LGBTQ employees (57%) reported hearing negative comments at work within the past five years; over one-third (36%) reported hearing negative comments within the past year. And lastly, LGBTQ employees who were out to at least a few coworkers and/or their supervisor were three times as likely to report experiencing discrimination (39% vs. 12%) and more than twice as likely to report harassment (42% vs. 17%) because of their sexual orientation or gender identity as LGBTQ employees who were not out to anyone at work."

2. **Plaintiff's failure-to-promote claims should stand because Plaintiff has successfully alleged that she was qualified for the position for which she applied.**

Plaintiff was more than qualified for the positions she applied for and did not receive. In most cases, those who were given promotions over her had fewer overall qualifications that she did yet were still awarded the position. Meaning, Plaintiff has a master's degree in Sociology and those awarded only possessed a bachelor's degree, Plaintiff has more years of experience at a supervisory capacity (nearly 15 years) while those awarded had little to no experience as a supervisor and had zero years' experience working in Program Operations, while Plaintiff had well over 25 years of experience at the time, etc. Plaintiff has identified specific facts that support her claim, including Defendant's refusal to promote Plaintiff despite her superior qualifications and preferential treatment of heterosexual employees in similar circumstances. Again, please look at resumes that Plaintiff is not privy to unless this case can make it to Discovery.

3. **Plaintiff's failure-to-promote claims should be dismissed on the additional ground that Plaintiff has failed to allege that the individual hired was similarly or less qualified than Plaintiff.**

Plaintiff officially states that the individuals that were ultimately awarded the positions were similarly or less qualified than she is. Please see Johanna Reed's resume that was previously provided and compare it to the Plaintiff's. Additionally, please see letter sent to Judge D'Agostino supporting a meeting prior to Defendant's Motion to Dismiss where Plaintiff pointed out the interview notes that clearly show how Ms. Rebecca Leo was not as qualified. Rebecca Leo was complimented for remembering her Cover Letter and for making increased eye contact throughout the interview. These are very basic interview skills that should be mastered by this level and, yet she scored higher than Plaintiff based on the interview summaries that were provided by the Defendant. These summaries stated that Rebecca Leo shadowed a Treatment

Team Leader for a day, whereas I covered for TTL's on/off for years when I worked at Marcy Day Habilitation. Again, please see the letter sent to Judge D'Agostino by Plaintiff for copies of these summaries.

### D. Plaintiff's Retaliation Claims Should Stand.

Previously, a plaintiff pursuing a hostile work environment claim under the NYSHRL had to demonstrate that the harassing conduct was "severe or pervasive." This standard, which mirrors that under Title VII of the federal Civil Rights Act of 1964, poses a high bar for plaintiffs to meet. The new amendments to the NYSHRL, however, eliminate this standard. Instead, an individual will have to show that he or she was subjected to "inferior terms, conditions, or privileges of employment because of the individual's membership in one or more protected categories." This new standard more closely mirrors that under the NYCHRL, where a plaintiff must show that he or she was "treated less well" than other employees because of his or her inclusion in a protected category.

Further, the new standard removes the following: a company can avoid liability for certain hostile work environment claims under the NYSHRL if it can establish the "*Faragher-Ellerth* defense," *i.e.*, that the company had a procedure for employees to report alleged harassment and that the alleged victim failed to file an internal complaint under this procedure. Under the new amendments, however, an employee's failure to file an internal complaint "shall not be determinative" of whether his or her employer is liable. This change brings the NYSHRL into closer alignment with the NYCHRL, which has similarly limited application of the *Faragher-Ellerth* defense.

Plaintiff's allegations regarding retaliation and hostile work environment were not before the EEOC in the original charge. However, Plaintiff has specifically alleged that the retaliation was a

*result* of her filing that charge. "[J]urisdiction exists over Title VII claims only if they have been included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is reasonably related to that alleged in the EEOC charge." *Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir. 2002). However, "(S)ubsequent conduct is reasonably related to conduct in an EEOC charge if: (1) the claim would fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination; (2) *it alleges retaliation for filing the EEOC charge*; or (3) the plaintiff `alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge.'" *Alfano*, 294 F.3d at 381 (citing *Butts v. City of N.Y. Dep't of Hous. Preservation and Dev.*, 990 F.2d 1397, 1402-03 [2d Cir. 1993]); *see also Duplan v. City of New York*, 888 F.3d 612, 622 (2d Cir. 2018) ("[I]f a plaintiff has already filed an EEOC charge, we have been willing to assume that the exhaustion requirement is also met for a subsequent claim `alleging retaliation by an employer against an employee for filing an EEOC charge.'")."

In Plaintiff's Amended Complaint, she referred to five separate actions as being retaliatory: (1) She was retaliated against for filing a union grievance in October 2019; please note the close temporal proximity to this filing and her adoptive parent's Family Care Home being closed shortly before Christmas; it was approximately 6 weeks after she submitted this complaint on October 31, 2019.  Additionally, Plaintiff never stated that the Justice Center retaliated against her.  Plaintiff meant to state that *an employee of Central New York DDSO called* the Justice Center to file a report because of this error (e.g. giving a person who had high cholesterol McDonald's pancakes after fasting bloodwork) that could have been a simple retraining, was the person retaliating against me, not the Justice Center; and that this employee had a higher than average level of access to my parent's records as they had the information to make this call.

Plaintiff's parents had previously received great reviews in their nearly 30 years as Family Care Providers. To make a minor mistake that resulted in the four people that lived with them for over 20 years cause a Justice Center call that would ultimately take them from their home two weeks before Christmas did not fit the level of error that had occurred; it could have been a simple retraining and would have caused less emotional and psychological harm to everyone involved. (2) Plaintiff claimed that she was retaliated against as her employer utilized my older Treatment Team Leader Civil Service examination results/score over the newest one; please note that Defendant was *the only agency* that chose to utilize Plaintiff's lower score and that this was to her detriment. This looked suspect as it blocked her from sitting to interview for positions that she would otherwise have been more qualified for. Meanwhile, Plaintiff was sent Canvass Letters from many other agencies that chose to use the new score. (3) Plaintiff alleged that she was retaliated against in connection with her filing of a rebuttal statement in the EEOC proceeding by being transferred to a different workstation; there is a strong temporal proximity to show causal connection (20 days later, to be exact) and this was more than a mere inconvenience as it consisted of Plaintiff's reassignment to the worst and most infamous workstation in the entire building. Again, this occurred 20 days after submitting her rebuttal statement that she filed with the EEOC on 12/22/22. This allegation should be considered retaliation based on the following: The suspicious timeline of occurring 20 days after Plaintiff filed her rebuttal to her Employer's Position Statement with the EEOC (a protected activity), it is more than a mere inconvenience, it interferes with her work performance as she feels punished and isolated for participating in a protected activity, there is a serious lack of privacy, Plaintiff's new location is loud and distracting (during many meetings, Plaintiff's supervisor Darlene Croston has asked that she mute her headphone mic as the background noise is very distracting

during meetings), she has no privacy (she has since placed privacy screens over her two monitors and laptop), and she must contend with extreme temperatures due to her new location's proximity to the exit. In this instance, the direct evidence demonstrates two things: "not only a hostility toward members of the employee's class, but also a direct causal connection between that hostility and the challenged employment decision." *Smith*, 225 N.J. at 394 (quoting *Sisler*, 157 N.J. at 208). (4) Plaintiff claimed that the acts involving an individual threatening her in July and August 2023 were retaliatory; her intention here was to show temporal proximity to the protective measures (less than 30 days apart) that were put into place by Defendant after this instance (i.e. an Order of Protection) and yet Defendant knowingly allowed this individual to come to Plaintiff's place of work; close temporal proximity to Plaintiff's second Rebuttal that was due in response to Defendant's second Employer Position Statement.  The individual did not retaliate against Plaintiff but, rather, the Defendant retaliated against her by putting her in harm's way of the individual by ignoring an Order of Protection that was put into place to keep her safe.  Additionally, the Police officer that Plaintiff spoke with agreed that this was the fault of the Defendant as there would have been no way for the individual to know where she worked *and* because he didn't know how to drive himself to the location; the employee's that work for the Defendant drove him to Plaintiff's place of work.  The police officer asked for Defendant's Director's name and number.  Plaintiff gave the police officer contact information for the Director of Central New York DDSO, Kristin Ward, for his future follow up.  Plaintiff has previously submitted emails and text messages that show date and time stamps to this instance and that she had to argue, with the help of union representative Monica Moore, with Defendant to do the right thing and obey the Order of Protection.  Just

another instance in which the Defendant showed blatant disregard for rules and regulations that Plaintiff can prove in writing.

Plaintiff Has Adequately Pleaded a Retaliation Claim Under Both NYSHRL and NYCHRL. Plaintiff satisfies the requirements for retaliation claims under the NYSHRL and NYCHRL by alleging Protected Activity (filing complaints with her union and external agencies, including the EEOC), Adverse Action (the deliberate withholding of promotions), and Causal Connection (a clear temporal proximity between Plaintiff's complaints and the adverse actions).

Additionally, Plaintiff claimed that her *co-worker* (Johanna Reed, TTL, who is higher in grade than she was and not on the same level or less in the chain of command) glaring at her behind her back was retaliatory. Temporal proximity showed a connection to this act as it was less than a month after Plaintiff made a formal complaint to Deputy Director, Erika Atkinson, regarding the ethics violation that occurred during this interview process. Again, Plaintiff has emails and texts messages that speak to this conversation with date and time stamps. One of the panelists on this interview panel, Kelly Hammil, is Johanna Reeds' close friend and this knowledge is known to many as they've gone on vacations together and posted it on Facebook. Please see previously submitted information showing how this was not the first time this had occurred (meaning, that Kelly Hammil sat on an interview panel for Johanna Reed), and that management stated that they were aware but "keeping an eye on it". Again, blatantly disregarding the rules and regulations Defendant provides training on in yearly mandatory Ethics trainings. Again, Plaintiff has written proof of this.

## CONCLUSION

Retaliation can take many forms, including termination, discipline, negative evaluations, department or shift changes, demotion, increased surveillance, hostility or ostracization by co-workers, and blackballing and adverse job references if the employee wants to find a job elsewhere. Employers often react to internal discrimination complaints by attacking those who complain in order "to isolate the charging party and to send a message to other workers that the cost of pursuing legal remedies to discrimination will be prohibitively high." "McCann, Tomaskovic-Devey, and Badgett 2018."

Even if workers are able to navigate the complaint process and are not bound by a forced arbitration clause, workers who file lawsuits face substantial barriers in succeeding on their claims in court due to onerous legal standards such as heightened proof requirements for filing a complaint, surviving summary judgment, certifying a class, and proving a claim. These rules create enormous evidentiary hurdles for workers and disregard the reality of extreme information asymmetry where workers often lack access to the evidence that courts require to support employment discrimination claims. "Brian S. Clarke, "A Better Route Through the Swamp: Causal Coherence in Disparate Treatment Doctrine," Rutgers Law Review 65, no. 3 (2013): 723-86." As a result, employment discrimination plaintiffs face an extremely low success rate in pretrial 30 adjudications: During the period from 1979 to 2006, employment discrimination plaintiffs won fewer than 4% of pretrial adjudications in federal court, while other plaintiffs won 21%. "Kevin M. Clermont and Stewart J. Schwab, "Employment Discrimination Plaintiffs in Federal Court: From Bad to Worse?" Harvard Law & Policy Review 3, no. 1 (2009): 103-32."

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss in its entirety.  Defendant's Motion to Dismiss relies on outdated law and fails to account for the amended NYSHRL, which now mirrors the NYCHRL's expansive approach.

23

Plaintiff has adequately alleged actionable retaliation claims under both statutes. Should the Court find any deficiencies in the Complaint, Plaintiff seeks leave to amend pursuant to Rule 15(a)(2), which directs that leave to amend "shall be freely given when justice so requires." Plaintiff submits to this Court a good-faith basis for arguing reversal of this precedent. Plaintiff's complaint contains facts of sufficient particularity supporting her claims for discrimination because of her sexual orientation, retaliation, and for a hostile work environment. Accordingly, based on the foregoing, the Defendant's motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6), should be denied, together with such other and further relief this Court may deem just and proper.

Dated: November 25, 2024

RESPECTFULLY SUBMITTED,
THE PLAINTIFF,

Linda L. Hawley, Pro Se
228 Maple Drive
Oneida, NY 13421
(315) 360-6558

State of: _New York_
County of: _Madison_
Sworn and subscribed before me this
_25th_ Day of _November_ _2024_ by
_____, Notary Public
Commission Exp. _5/13/25._

LORI L. FROMEY
Notary Public, State of New York
No. 01FR6281196
Qualified in Madison County
Commission Expires May 13th, 20 _25_.